[942 NE2d 283, 917 NYS2d 74]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM PORTO, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RODRIGUECE GARCIA, Also Known as CARLOS RODRIGUEZ, Appellant.

Argued November 16, 2010; decided December 21, 2010

**POINTS OF COUNSEL**

*Center for Appellate Litigation*, New York City (*Carl S. Kaplan* and *Robert S. Dean* of counsel), for appellant in the first

above-entitled action. I. Appellant was deprived of his constitutional right to counsel when the trial court summarily denied his request for reassignment of counsel without conducting any inquiry regarding the grounds for appellant's application, or giving appellant an opportunity to elaborate upon his standard-form pro se motion papers for the same relief, or giving him an opportunity to elaborate upon counsel's brief statement, which referred to appellant's "frustrat[ion]." (*People v Sides*, 75 NY2d 822; *Pointer v Texas*, 380 US 400; *Gideon v Wainwright*, 372 US 335; *People v Linares*, 2 NY3d 507; *People v Medina*, 44 NY2d 199; *Powell v Alabama*, 287 US 45; *People v Cunningham*, 49 NY2d 203; *People v Davis*, 75 NY2d 517; *People v Arroyave*, 49 NY2d 264; *People v Sawyer*, 57 NY2d 12.) II. Appellant's adjudication and sentence pursuant to New York's persistent violent felony offender statutes are unconstitutional under the principles announced in *Apprendi v New Jersey* (530 US 466 [2000]). (*Almendarez-Torres v United States*, 523 US 224; *People v Rivera*, 5 NY3d 61; *Shepard v United States*, 544 US 13; *People v Rosen*, 96 NY2d 329; *People v Leon*, 10 NY3d 122; *Blakely v Washington*, 542 US 296; *Cunningham v California*, 549 US 270; *People v Samms*, 95 NY2d 52; *People v Patterson*, 39 NY2d 288; *People v Crimmins*, 36 NY2d 230.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Sara M. Zausmer* and *Karen Schlossberg* of counsel), for respondent in the first above-entitled action. I. The trial court's denial of defendant's eve-of-trial motion to replace his attorney was proper. (*People v Sides*, 75 NY2d 822; *People v Sawyer*, 57 NY2d 12, 459 US 1178; *People v Medina*, 44 NY2d 199; *People v Smith*, 192 AD2d 310, 82 NY2d 731; *People v Linares*, 2 NY3d 507; *People v Arroyave*, 49 NY2d 264; *People v Tineo*, 64 NY2d 531; *People v Beriguette*, 84 NY2d 978; *People v Stevenson*, 36 AD3d 634, 8 NY3d 927; *People v Moore*, 41 AD3d 1149.) II. Defendant's claim that his adjudication as a persistent violent felony offender violated his right to a jury trial under *Apprendi v New Jersey* (530 US 466 [2000]) is unpreserved and meritless. (*People v Leon*, 10 NY3d 122; *People v Thomas*, 50 NY2d 467; *People v Patterson*, 39 NY2d 288, 432 US 197; *People v Rosen*, 96 NY2d 329, 534 US 899; *People v Besser*, 96 NY2d 136; *People v Rivera*, 9 NY3d 904; *People v Oliver*, 63 NY2d 973; *People v Kelly*, 5 NY3d 116; *People v Arthur*, 22 NY2d 325; *People v Callahan*, 80 NY2d 273; *People v McLucas*, 15 NY2d 167.)

*Office of the Appellate Defender*, New York City (*Matthew L. Mazur, Richard M. Greenberg* and *Eunice C. Lee* of counsel), for

appellant in the second above-entitled action. In the absence of inquiry sufficient to establish that there was no actual conflict of interest, the Supreme Court's denial of defense counsel's motion for substitution of counsel deprived Carlos Rodriguez of his right to conflict-free counsel at the sentencing hearing. (*People v Ortiz*, 76 NY2d 652; *People v Sides*, 75 NY2d 822; *People v Medina*, 44 NY2d 199; *People v Rozzell*, 20 NY2d 712; *United States v Davis*, 239 F3d 283; *Holloway v Arkansas*, 435 US 475; *People v Linares*, 2 NY3d 507; *Lopez v Scully*, 58 F3d 38; *People v Williams*, 35 AD3d 1085; *People v Ulloa*, 300 AD2d 60.)

*Robert T. Johnson, District Attorney*, Bronx (*Cynthia A. Carlson, Joseph N. Ferdenzi* and *Nancy Killian* of counsel), for respondent in the second above-entitled action. The denial of defense counsel's eleventh-hour request for substitution was a proper exercise of the court's discretion. (*People v Sides*, 75 NY2d 822; *People v Sawyer*, 57 NY2d 12; *People v Medina*, 44 NY2d 199; *People v Cross*, 262 AD2d 223, 94 NY2d 902; *People v Linares*, 2 NY3d 507; *People v Arroyave*, 49 NY2d 264; *People v Carncross*, 14 NY3d 319; *People v Tineo*, 64 NY2d 531; *People v Senghor*, 248 AD2d 299, 92 NY2d 905; *People v Burgos*, 298 AD2d 190, 99 NY2d 580.)

## OPINION OF THE COURT

JONES, J.

The common issue presented in these appeals is whether defendants' motions to substitute counsel were properly denied in light of the "minimal inquiry" standard of *People v Sides* (75 NY2d 822 [1990]). Finding no reversible error, we affirm both convictions.

### *People v Porto*

On July 24, 2006, complainant Sai Hung Chui returned to his apartment to find that he had been the victim of a burglary. The police recovered a fingerprint from a metal cookie tin that had been displaced during the crime and determined that it belonged to defendant William Porto. Subsequently, defendant was arrested on September 27, 2006 and charged with second- and third-degree burglary.

On June 12, 2007, the first morning of jury selection, the trial court was informed that defendant had submitted a form, pro se motion seeking reassignment of counsel. The form motion

contained three preprinted grounds for the motion,[1] and a final, blank paragraph for the movant to further address the grounds of his application. Defendant circled the three grounds for the motion, but did not provide any information within the blank space to elaborate upon his motion for new counsel.

The court engaged in a colloquy with defense counsel, ascertaining whether he could effectively represent defendant. Defense counsel responded that he had been an attorney for the Legal Aid Society since 1989, had conducted 30 to 40 felony trials, and was not aware of any reason that would prevent him from providing defendant with effective representation. Counsel also stated that he was not seeking to be replaced and further explained his belief that defendant's motion was based on "frustration" regarding how fingerprint evidence had been addressed.[2] Defense counsel advised the court that he intended to move to preclude such evidence in order to remedy any of defendant's concerns. The trial court denied the motion for substitution of counsel, concluding that defense counsel was capable of providing effective assistance and that the matter was ready for trial.

Defendant's motion to preclude fingerprint evidence was denied. A jury convicted him of burglary in the second degree and he received an enhanced sentence, as a persistent violent felony offender, of 16 years to life.

The Appellate Division unanimously affirmed the conviction, concluding that defendant's day-of-trial motion lacked specific allegations of a serious complaint to obligate the trial court to inquire about the basis of the application (66 AD3d 430 [1st Dept 2009]). Although there was no basis requiring the trial court to engage in an inquiry, its colloquy with defense counsel did not uncover any specific ground for substitution of new

---

1. The preprinted form read:
"[Defense counsel failed to:]
"(a) visit defendant at his place of confinement or have him produced to the Court for a consultation;
"(b) provide copies and inform defendant of any Motions filed, Responses and Court's decisions thereto;
"(c) forward me copies of any bill of particulars and or discovery in his/her possession."
2. On May 29, 2007—approximately 13 days before trial—defense counsel first became aware that fingerprint evidence had been recovered from a metal cookie tin, and that the cookie tin had not been photographed or vouchered by the New York City Police Department for defense expert's review.

counsel. A Judge of this Court granted leave to appeal (14 NY3d 772 [2010]), and we now affirm.

### *People v Garcia, also known as Rodriguez*

On August 23, 2006, complainant Wilson Crispin, a truck driver, discovered defendant Rodriguece Garcia inside the cab of his truck. Defendant displayed a knife, instructed complainant to not call the police, and fled. Complainant observed that the passenger window had been broken and that a CB radio and his identification card were missing. Defendant was later arrested, found carrying complainant's identification card.

On May 6, 2008, defendant accepted an offer to plead guilty to attempted robbery in the first degree in exchange for a sentence of seven years in prison with five years of postrelease supervision. Defendant assured the court that he had not been influenced in any way to accept the plea offer. As a condition of the plea agreement, defendant was required to speak with a New York City Department of Probation officer regarding the facts of the incident to help in the preparation of a presentence report. He acknowledged this obligation after being unequivocally warned by the court that failure to do so could result in the imposition of an enhanced sentence.

At the subsequent sentencing hearing, on May 28, 2008, the probation officer advised the court that defendant declined to speak about the facts, and instead informed the officer that he was considering withdrawing his plea. When the court inquired as to whether defendant wished to withdraw his guilty plea, defense counsel responded that defendant declined to do so. The court adjourned the hearing to provide defendant another opportunity to speak with probation.

At the final sentencing hearing on June 24, 2008, the probation officer apprised the court that defendant again declined to discuss the facts of the case, and consequently, failed to comply with the condition of the plea offer. When the court pronounced that it would enhance defendant's sentence for his violation of the court's prior directive, defendant moved to withdraw his plea and to substitute counsel. Defense counsel then indicated to the court that she was uncomfortable speaking on the matter because it appeared that defendant took issue with her performance as counsel, and she felt constrained by ethical considerations from fully explaining the issue to the court. However, defense counsel did proffer a general complaint that defendant believed he was coerced by counsel into accepting the plea offer.

The court found this motion to be based on "a vague, unspecified claim," and appeared dubious of the application, referring to the prior hearings where defendant made assurances that he was pleading guilty and would comply with conditions of the plea offer.

The court also spoke directly with defendant, who alleged that he "was forced to take this plea[ ] bargain and . . . made a decision and plead[ed] guilty . . . without making the decision." The court similarly questioned defendant about the prior hearings where he had responded that his plea was voluntary and that nothing affected his competency in accepting the plea offer. The court also referred to the probation officer's presentence reports where defendant reported that he was pleading guilty on advice of counsel and did not intend to withdraw the plea. The court denied the motion to substitute counsel and sentenced defendant to a term of seven years and six months, with five years of postrelease supervision.[3]

The Appellate Division affirmed defendant's conviction and found that the sentencing court engaged in a lengthy colloquy where defendant and his counsel were only able to proffer generalities as a basis of the motion to substitute counsel (71 AD3d 555 [1st Dept 2010]). The court rejected defendant's contention that the alleged conflict of interest prevented further explanation of the complaint, concluding that his attorney could have revealed the allegations without admitting them. A Judge of this Court granted leave to appeal (15 NY3d 750 [2010]), and we now affirm.

### "Minimal Inquiry" Standard

It is well settled that an indigent defendant is guaranteed the right to counsel by both the Federal and New York State Constitutions (see US Const 6th Amend; NY Const, art I, § 6), but this entitlement does not encompass the right to counsel of one's own choosing (see People v Sawyer, 57 NY2d 12, 18-19 [1982]). While a court has a duty to investigate complaints concerning counsel, "this is far from suggesting that an indigent's request that a court assign new counsel is to be granted casually" (id. at 19).

Whether counsel is substituted is within the "discretion and responsibility" of the trial judge (People v Medina, 44 NY2d 199, 207 [1978]), and a court's duty to consider such a motion is

---

3. Defendant Garcia's sentence was enhanced six months by the court.

invoked only where a defendant makes a "seemingly serious request[ ]" (*Sides*, 75 NY2d at 824). Therefore, it is incumbent upon a defendant to make specific factual allegations of "serious complaints about counsel" (*Medina*, 44 NY2d at 207). If such a showing is made, the court must make at least a "minimal inquiry," and discern meritorious complaints from disingenuous applications by inquiring as to "the nature of the disagreement or its potential for resolution" (*Sides*, 75 NY2d at 825).

Upon such a review, counsel may be substituted only where "good cause" is shown. This Court has enumerated several factors that should be weighed by a court in reviewing a motion for new counsel. "In determining whether good cause exists, a trial court must consider the timing of the defendant's request, its effect on the progress of the case and whether present counsel will likely provide the defendant with meaningful assistance" (*People v Linares*, 2 NY3d 507, 510 [2004]). We have previously recognized two instances of good cause mandating substitution of counsel: "first, when an attorney is assigned to represent two defendants between whom there is a conflict of interest and second, when the defense counsel has 'not adequately investigated his client's history of mental disorder' " (*Linares*, 2 NY3d at 511). Here, neither appeal presents these two situations, nor other factors meriting substitution of counsel.

In *Porto*, defendant contends that the trial court failed to make a sufficient inquiry because it engaged in a colloquy solely with defense counsel without directing any questions towards defendant, and affording him a basis to explain his petition. We find defendant's argument unavailing.

While defendant seeks a rule of law requiring a court to pose questions directly to every complaining defendant, "practical constraints on the administration of a program for providing legal assistance dictate that 'as long as assigned counsel are men [and women] of ability and integrity, the discretion and responsibility for their selection rest with the court' " (*Medina*, 44 NY2d at 207, quoting *People v Brabson*, 9 NY2d 173, 181 [1961]). Here, there is no evidence in the record indicating an abuse of discretion by the court in denying the motion for substitution of counsel where defendant failed to proffer specific allegations of a "seemingly serious request" that would require the court to engage in a minimal inquiry. Defendant's form motion did not contain any specific factual allegations that would

indicate a serious conflict with counsel, despite being provided the space to develop such a complaint (*see People v Thompson*, 32 AD3d 743 [1st Dept 2006] ["summary denial of defendant's conclusory application for new counsel was proper, since defendant failed to make any serious complaint requiring further inquiry"]; *People v Stevenson*, 36 AD3d 634, 635 [2d Dept 2007] ["Further inquiry was not required because (defendant's) conclusory assertions did not suggest the serious possibility of a genuine conflict of interest"]). Further, the trial court did engage in a colloquy with defense counsel and properly exercised its discretion by considering the timing of the motion—the morning of jury selection—and expressing its confidence in the abilities of defense counsel, who had conducted 30 to 40 felony trials. A vague, conclusory allegation of "frustration" was not sufficiently specific to require a minimal inquiry by the court, and certainly did not warrant a grant of his motion (*see Medina*, 44 NY2d at 208 ["tensions between client and counsel on the eve of trial" is not good cause]).

While defendant urges that this is a more compelling case than *Sides*, such an argument is not supported by the record. In *Sides*, the defendant's motion for new counsel was acknowledged by the defense counsel who confirmed an apparent rift in the attorney-client relationship. This Court held that where potential conflict is acknowledged by counsel's admission of a breakdown in trust and communication, the trial court is obligated to make a minimal inquiry, but here, no facts exist to mandate such a review. A blank form motion and defense counsel's explanation of defendant's "frustration" are not specific allegations obligating the trial court to conduct a minimal inquiry in light of the timing of the request on the morning of jury selection and counsel's assurance of effective representation based on his felony trial experience. Rather, here, as in *People v Beriguette* (84 NY2d 978, 980 [1994]), "[w]e reject defendant's contention that [the court] was obligated to inquire further, after reviewing his motion for reassignment of counsel, into the factual bases for his *pro se* submission, as defendant failed to show good cause for substitution." As such, we find no basis to reverse the Appellate Division and overturn defendant's conviction.

█ In *Garcia*, the record is clear that throughout the series of court hearings, defendant never indicated any dissatisfaction with counsel until the morning of sentencing (*see Medina*, 44 NY2d at 205 [no dissatisfaction with counsel until the morning

of trial]; *Linares*, 2 NY3d at 511-512 [defendant had no discontent with counsel until the eve of trial]). It was not until the final hearing, where the court indicated that it would enhance defendant's sentence for failure to comply with plea offer conditions, that defendant sought new counsel. Here, the court engaged in sufficient minimal inquiry by directing questions to both defendant and defense counsel, but counsel consistently evaded expounding upon the motion. However, she did acknowledge that defendant had professed a belief that he was coerced by counsel into accepting the guilty plea, and defendant offered a similarly general allegation. The court also properly considered the progress of the case, referring to prior assurances by defendant that he would plead guilty and comply with conditions of the plea offer. It can also be inferred from the record that the motion for new counsel was a possible delay tactic in light of the timing of the request after defendant's persistent refusal to comply with the court's directive. Therefore, it was not an abuse of discretion by the court to conclude that defendant's vague claims were unavailing and to deny the motion, particularly where a lengthy inquiry could not find further facts to support the allegation (*Linares*, 2 NY3d at 511 ["The court . . . reasonably concluded that defendant's vague and generic objections had no merit or substance"]).

Defendant Porto's additional argument, raising an *Apprendi* challenge to New York's mandatory persistent violent felony offender statutes, is also meritless.

Accordingly, in each case, the order of the Appellate Division should be affirmed.

PIGOTT, J. (dissenting). I respectfully dissent. In my view, the trial court's failure to ask defendant William Porto about his motion for assignment of new counsel before denying it was reversible error.

I don't disagree with the majority's statement of basic principles, i.e., that the right to counsel is guaranteed by both the Federal and State Constitutions. However, the trial court's responsibility to protect a defendant's right to counsel does not end with the assignment of a lawyer (*People v Linares*, 2 NY3d 507, 510 [2004]). Because assigned counsel must be effective, we have repeatedly held that "trial courts must carefully evaluate serious complaints about counsel" (*id.*, quoting *People v Medina*, 44 NY2d 199, 207 [1978] [internal quotation marks omitted]), and "should substitute counsel when a defendant can

demonstrate 'good cause' " for substitution (*Linares*, 2 NY3d at 510).

Where defendant's request for new assigned counsel on its face suggests "a serious possibility" of good cause for substitution, the trial court must inquire into the nature of the problem and whether it may be resolved (*People v Sides*, 75 NY2d 822, 824-825 [1990]). Indeed, although we used the term "minimal inquiry" in *People v Sides* (75 NY2d at 825), implying that a lengthy or extensive inquiry is not necessarily required, we evaluate such an inquiry by considering whether or not it was "diligent and thorough" (*Linares*, 2 NY3d at 511).

Whether the trial court is always obliged to make inquiries of defendant himself is less clear; and this, in my view, is where the experience of the court is most important and where record support for the court's ruling must be found. What is certain is that a defendant must be given the opportunity to demonstrate whether he has good cause for new assigned counsel, and it seems to me that—at least when the defense counsel whom defendant wants replaced does *not* state in any detail defendant's reasons for seeking new counsel—a "diligent and thorough" evaluation of defendant's complaint would necessarily require making an inquiry of defendant himself. One way or the other, "the defendant must at least be given an opportunity to state the basis for his application" (*People v Bryan*, 31 AD3d 295, 296 [1st Dept 2006]).

Here, defendant's written pro se motion on its own suggests a "serious possibility" that he was in irreconcilable conflict with a lawyer who, according to defendant, would not visit him or keep him apprised of motion practice—until the eve of trial. And certainly defense counsel's casual assertions about defendant's frustration tend to support the conclusion of a breakdown of trust.* Significantly, these remarks do not explain away defendant's complaint, or give the trial court a basis on which to make a careful evaluation of whether trusting communication between attorney and client had been irretrievably broken.

---

* Porto may reasonably have felt that his lawyer's representation was flawed. Defense counsel admitted that it was only on May 29, 2007 that he became aware that defendant's fingerprint had been taken from a cookie tin in complainant's apartment and initiated the process of finding out whether the tin had been photographed or vouchered. Counsel must not have read the voluntary disclosure form and attachment that he received from the District Attorney, at the time of defendant's indictment some eight months earlier, carefully enough to see that the cookie tin needed to be preserved.

Defendant's motion, in conjunction with assigned counsel's comments, warranted such an inquiry.

The People argue that the trial court was able, on the basis of counsel's remarks, to ascertain that the disagreement between defendant and his lawyer concerned the mishandling of the cookie tin issue and would be resolved by a motion to preclude the cookie tin evidence. It is far from clear that the cookie tin issue was defendant's only concern about counsel's representation, and I don't see how even that disagreement could reasonably be thought to have been resolved by defense counsel's (unsuccessful) eve-of-trial oral motion to preclude.

The majority rests its decision primarily on the failure of defendant to make "specific factual allegations that would indicate a serious conflict with counsel, despite being provided the space to develop such a complaint" (majority op at 100-101). In fact, defendant made three factual allegations in his pro se application and, if they lack specificity, it is only because they are negative in character, as one would expect from a complaint that a lawyer has failed to communicate.

Like the Appellate Division, the majority of this Court makes much of the fact that defendant's motion was a mere "form" motion (*see* majority op at 96, 100-101, 101). Leaving aside the fact that most motions are a form of one nature or another, the majority's conclusion seems to be that this type of pro se motion is to be frowned upon. To the contrary, I find the fact that a defendant went to the trouble to find such a form, fill it out and submit it to the court to be a strong indication of the seriousness of defendant's claim. Many, if not most, such motions are either made verbally at the time of appearance in court or through counsel—not, as here, in written form. Rather than being criticized, this practice should be encouraged and taken seriously.

I also believe that the majority unfairly highlights the "timing of the request on the morning of jury selection" (majority op at 101), when defendant's motion was apparently completed and signed 10 days earlier, defendant told the trial court that he had sent the application to the court, and the thrust of the application is that defense counsel failed to communicate effectively with defendant. Defense counsel's motion to preclude the fingerprint evidence, let it be noted, was oral and also made on the day of trial.

Defendant's motion and defense counsel's remarks taken together suggest a serious possibility of irreconcilable conflict

between defendant and counsel. Whether defendant actually had good cause for assignment of new counsel is a different matter, which should be carefully separated from whether defendant's request suggested a serious possibility that he had good cause.

Finally, I note that harmless error analysis is not applicable (*People v Arroyave*, 49 NY2d 264, 273 [1980] ["(W)e reject the People's contention that defendant is entitled to a new trial only if he can demonstrate that he was prejudiced by the court's denial of the request for substitution of retained counsel and an adjournment to prepare for trial. The constitutional guarantee to be represented by counsel of one's own choosing is a fundamental right, and the doctrine of harmless error is inapplicable upon a showing that such right has been abridged"]).

In my view, reversal is mandated in light of our clear direction in *Sides* and *Linares*. A defendant is entitled to a new trial where the trial court asked him no questions concerning a serious pro se motion seeking substitution of counsel, but instead limited its inquiry to a cursory questioning of the very counsel with whom the defendant is alleging a conflict: in essence hearing only one side of the story.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and SMITH concur with Judge JONES; Judge PIGOTT dissents in a separate opinion.

In *People v Porto*: Order affirmed.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

In *People v Garcia*: Order affirmed.