THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVIEL MCCUMMINGS, Appellant. [1 NYS3d 97]—

Judgment, Supreme Court, New York County (Renee A. White, J.), rendered December 20, 2010, convicting defendant, after a jury trial, of attempted murder in the second degree, assault in the first degree, and two counts of criminal possession of a weapon in the second degree, and sentencing him, as a second felony offender, to an aggregate term of 20 years, reversed, on the law, and the matter remanded for a new trial.

Defendant is entitled to a new trial because the court improperly denied his request for substitution of counsel without conducting any inquiry whatsoever, and without permitting defendant to explain, either orally or in writing, why such an inquiry might be necessary (*see People v Rodriguez*, 46 AD3d 396 [1st Dept 2007], *lv denied* 10 NY3d 844 [2008]). At the beginning of the fourth day of trial, defendant asked to speak to the court. In denying his request, the court clearly assumed that he wanted to make a statement pertaining to his defense, even after defendant indicated that the subject matter was "my attorney and advice" and that the attorney was not "doing his proper work." Defendant then asked to hand up papers that defense counsel immediately identified as "a notice of motion for reassignment of counsel," but the court refused to look at the papers, and stated, "I will not reassign counsel. The motion is denied."

Contrary to the dissent's characterization, it is not exalting form over substance to expect the trial court to allow a defendant seeking to substitute counsel the opportunity to make specific factual allegations in support of his or her application. In *People v Sides* (75 NY2d 822 [1990]), for instance, the trial court was found to have erred in failing to ask "even a single question" about the nature of the disagreement after both the defendant and his counsel spoke of a breakdown in communications and trust (*id.* at 825; *see also People v Branham*, 59 AD3d 244 [1st Dept 2009]). Here, the court did not even learn the nature of the disagreement, let alone ask any questions about it. While not all requests for new counsel contain the specific factual allegations to show that the complaints and request are "serious," which then triggers the court's obligation to make a "minimal inquiry" into the nature of the disagreement and its potential for resolution (*see People v Porto*, 16 NY3d 93, 100 [2010]), here defendant was not given an opportunity to make any allegations. This is not a situation where a defendant rested on unelaborated claims; the court expressly declined to listen to

defendant or read his submissions (*see People v Sides*, 75 NY2d at 824; *cf. People v Nelson*, 7 NY3d 883, 884 [2006] [there was no abuse of the court's discretion in denying the application for substitution of counsel where the court initially rejected the application without inquiry, made just prior to jury selection, but "thereafter allowed defendant to voice his concerns about defense counsel" and heard defense counsel]).

The dissent's position is based on assumptions, rather than the actual record. First, the dissent assumes that defendant's application had no merit and was made solely as a "disruptive, dilatory tactic," because it was raised so late in the trial and directly followed the court's comment that defense counsel had had plenty of time to subpoena a particular surveillance tape, and could cross-examine the detective about its contents.

Whether defendant's application was a dilatory tactic is unknowable from this record because the court failed to ascertain the basis for defendant's motion before denying it. Second, the dissent assumes that defendant's motion was based solely on the manner in which the trial had been conducted until then. However, according to the record, defendant's initial request was based on "my attorney *and advice*" (emphasis added). A claim alleging incorrect or improper advice is a very different type of complaint from a claim based on an attorney's trial performance. The court could not have known about the specifics of the claim as to advice. We cannot know that the "advice" at issue pertained, as the dissent assumes, to defendant's testifying or any other defense strategy. Third, the dissent assumes that defendant's motion was nothing more substantive than a "preprinted form motion[ ]" such as is often prepared by defendants in advance for possible use (*see e.g. People v Porto*, 16 NY3d at 96). There is no evidence indicating what the motion papers consisted of, given that the court declined to accept them and they are not in the record. It is speculation to conclude that defendant's motion was pro forma. Even if he had used a printed form, we have no idea what defendant may have added to supplement the printed category of complaints. It would have taken, at most, a quick colloquy to discern whether defendant's application was "seemingly serious," based on its inclusion of "serious complaints" about his counsel (*see id.* at 99-100). The court, had it briefly engaged defendant and reviewed his papers, would then have had a basis on which to decide whether a minimal inquiry should be undertaken as to the nature of the disagreement or its potential for resolution. Absent a properly developed record, we cannot be as sanguine as the dissent is in finding the application disingenuous (*see id.* at 100). Alterna-

tively, given that the jury was ready to enter the courtroom, it would have been proper and justified for the court to indicate that the application had been made at an inopportune time and that it would consider defendant's papers at some other point in the day. We are mindful that had the court considered the application, only the most compelling circumstances would have justified granting it (*see People v Arroyave*, 49 NY2d 264, 271 [1980]). Nevertheless, we conclude that a new trial is unavoidable under the circumstances presented.

However, defendant has not established that he is entitled to suppression of his statements on the ground that they were the product of an unlawful arrest. The People had no burden to come forward with evidence supporting the arrest, because, notwithstanding the motion court's erroneous description of the hearing as a *"Dunaway/Huntley"* hearing, defendant only moved to suppress on voluntariness-related grounds and never litigated any Fourth Amendment issue regarding the statements (*see People v Wells*, 298 AD2d 142 [1st Dept 2002], *lv denied* 99 NY2d 586 [2003]). Defendant's argument that his counsel rendered ineffective assistance by failing to raise a Fourth Amendment claim may not be addressed on direct appeal because it involves matters outside the record requiring a CPL 440.10 motion. In the alternative, to the extent the existing record permits review, we find that defendant has not shown that counsel's failure to litigate the legality of his arrest was objectively unreasonable, or that it caused him any prejudice under the state and federal standards (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *Strickland v Washington*, 466 US 668 [1984]).

In light of the foregoing, we do not reach defendant's remaining contentions. Concur—Sweeny, J.P., Andrias, Richter and Feinman, JJ.

Saxe, J., dissents in a memorandum as follows: I would affirm the judgment convicting defendant of attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon. In my view, the trial court acted properly in denying, without further inquiry, defendant's request to be assigned new counsel. The application was made on the fourth day of trial, the court was fully aware of the aspect of counsel's conduct with which defendant took issue, and that conduct did not warrant the assignment of new counsel. Under the circumstances, no inquiry of defendant was warranted before the application was denied.

At the beginning of the fourth day of trial, before the jury was brought in, defense counsel remarked that although in one

of the DD5s he had been given less than a week earlier, a detective mentioned the existence of two surveillance camera DVDs, he, counsel, had only been given one tape. The court inquired of the prosecutor, who indicated that she had only been given one tape and that she had inquired of the detective, who said he had no knowledge of a second tape. The court then upbraided defense counsel for failing to subpoena the second tape, but said counsel could cross-examine the detective about such a tape. Immediately thereafter, defendant asked to speak, and when the court responded that he would have an opportunity if he wished to testify, defendant clarified, "I'm not talking about testifying. It is about my attorney and advice," continuing, "It's about him doing his proper work." When the court said, "Sir, I will not discuss it with you at this time," defendant asked to hand up papers that counsel identified as a notice of motion for reassignment of counsel. The court stated, "I will not reassign counsel. The motion is denied," and the jury was called in.

The majority holds that the trial court had an obligation to make a "minimal inquiry" by accepting and perusing defendant's prepared motion papers, and that its failure to do so requires reversal. In my view, however, the court here had no reason to make such an inquiry, and its failure to accept and peruse the pro se motion papers was not reversible error.

In considering an application for new assigned counsel, the court is required to carefully evaluate "seemingly serious requests in order to ascertain whether there is indeed good cause for substitution" (*People v Sides*, 75 NY2d 822, 824 [1990]). However, when such a motion is made during trial, only the most compelling circumstances will justify granting it (*see People v Arroyave*, 49 NY2d 264, 271 [1980]). Importantly, not all requests for new counsel trigger a court's obligation to make a "minimal inquiry" of the defendant (*see People v Porto*, 16 NY3d 93, 100 [2010]).

Grounds for the assignment of a new attorney are established where there is a genuine conflict of interest or a complete breakdown in communication between defendant and the attorney (*see People v Sawyer*, 57 NY2d 12, 19 [1982], *cert denied* 459 US 1178 [1983]); indications that assigned counsel is lacking in the requisite "ability and integrity" will also warrant action by the court (*see People v Porto*, 16 NY3d at 100). When the court has little or no first-hand knowledge of the level of counsel's performance or the interplay between counsel and the defendant, it will likely be necessary to make some inquiry to determine whether grounds for the assignment of new counsel exist. For example, in *People v Sides* (75 NY2d at 822), the de-

fendant was assigned counsel at his arraignment, appeared with counsel on the next court date, at which a plea offer was made, and the matter was adjourned for defendant's response. On the adjourn date, the defendant asked for the assignment of new counsel. The court, appropriately, heard from counsel regarding a breakdown in communication between himself and the defendant, but then "fail[ed] to ask even a single question about the nature of the disagreement or its potential for resolution" (*id.* at 825). It was due to the court's lack of first-hand information regarding the lawyer-client interactions, and the information provided by assigned counsel, that further inquiry by the court was necessary.

Here, in contrast, the application was made on the fourth day of trial. The trial judge had more than ample first-hand knowledge of counsel's highly competent work and efforts, and there had been no indications of a conflict of interest or a breakdown in communications up to that point. The most likely basis for defendant's sudden pro se application for new counsel was the interchange that immediately preceded the application, which concerned the possibility that a second surveillance camera DVD existed that was not provided, but counsel's conduct in this respect did not provide grounds to replace him.

Given what it had already seen up to that point, the court had every reason to conclude that there was no valid basis for defendant's application beyond the court's own remark regarding counsel's failure to subpoena the referred-to second tape. Even accepting the court's position that defense counsel should have subpoenaed the second DVD, it was apparent that cross-examination of the detective could shed sufficient light on the existence and content of any second tape, so counsel's "failure" was very far from establishing ineffective assistance warranting replacement of counsel at that point.

While the majority emphasizes defendant's reference to "my attorney and advice" in his first interjection, suggesting that the court had an obligation to ascertain the nature of defendant's presumed complaint that counsel gave incorrect or improper advice, it is hard to imagine the kind of "advice" that counsel might have given defendant at that point in time, on the fourth day of trial, that would have justified defendant's motion for new counsel. The advice that counsel would be giving defendant at that point in the case would relate to defendant's testifying or some other defense strategy. These are areas where differences of opinion between counsel and client often arise; however, their resolution does not involve replacing counsel.

By reversing based on the trial court's rejection of the pro se application without asking defendant to elaborate or reading through his papers, the majority is exalting form over substance. The timing of defendant's application, after days of damning testimony against him, had all the hallmarks of a disruptive, dilatory tactic, and there was no indication that the application was meritorious. Reversing defendant's conviction on this ground forces future trial courts to take part in a charade of seeming to peruse and consider meritless, often preprinted form motions that defendants prepare in advance for potential use should the opportunity arise (*see e.g. People v Porto*, 16 NY3d at 96).

Undoubtedly, it would have made this Court's task easier had the trial court simply engaged in that charade before denying the motion; going through those motions would have eliminated the issue here. However, a trial court should not be required to put on such a show where, as here, the defendant's application is not a "seemingly serious request" warranting "minimal inquiry" as contemplated by *People v Sides* (75 NY2d at 822).

Moreover, it should be acknowledged that as a practical matter, a substitution of counsel at that point would have necessitated a mistrial. It is simply disingenuous to suggest that a short continuance would have sufficed for a new attorney to pick up the trial in midstream within a few days, and a delay of anything beyond a few days normally necessitates releasing the jurors and commencing the trial anew. Surely, so drastic a result was not appropriate or necessary here.

To be clear, I fully recognize the critical importance of ensuring and protecting a defendant's right to competent, conflict-free representation. I do not mean to imply that it should be taken lightly. Nevertheless, in the present case nothing happened during the course of the trial to indicate that counsel was anything other than highly competent and conflict-free.

In my view, on the particular facts presented here, there was no reversible error at trial. Since I agree with the majority that defendant's motion to suppress his statements was properly denied, his conviction should be affirmed.