People v Dinkins (2026 NY Slip Op 01742)

People v Dinkins

2026 NY Slip Op 01742

Decided on March 24, 2026

Appellate Division, First Department

Rodriguez, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 24, 2026
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Troy K. Webber, Tanya R. Kennedy, Manuel Mendez, Julio Rodriguez III, John R. Higgitt

Ind No. 74869/22|74869/22|Appeal No. 4945|Case No. 2023-03512|

[*1]The People of the State of New York, Respondent,
vShaquille Dinkins, Defendant-Appellant.

Defendant appeals from a judgment of the Supreme Court, New York County (Gregory Carro, J.), rendered May 31, 2023, convicting defendant, upon his plea of guilty, of criminal possession of a firearm, and sentencing him, as a second felony offender, to a term of 1½ to 3 years.

Jenay Nurse Guilford, Center for Appellate Litigation, New York (Phoenix Rice-Johnson of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Anna Notchick and David E. A. Crowley of counsel), for respondent.

Rodriguez, J. 

Defendant appeals from a judgment convicting him of criminal possession of a firearm (Penal Law § 265.01-b[1]), upon his plea of guilty, for which Supreme Court sentenced him, as a second felony offender, to a prison term of 1½ to 3 years. Because Supreme Court summarily denied defendant's request for new counsel without giving him a fair opportunity to explain the basis for the request, the conviction and plea should be vacated and the matter remanded for further proceedings.
I.
By indictment filed November 4, 2022, defendant was charged with criminal possession of a firearm based on a September 20, 2022 incident. On January 9, 2023, defendant's court-appointed counsel filed an omnibus motion seeking, among other things, to suppress defendant's statements and the gun.
On January 25, 2023, defendant appeared with counsel for the court's decision on the motion. Immediately after the attorneys placed their names on the record, defendant asked for permission to speak to the court: "Excuse me, Your Honor. Before we start, can I please approach the Court?" The court ignored the request altogether and instead addressed the attorneys, stating that defense counsel's omnibus motion was granted to the extent of ordering a suppression hearing. Next, the People stated that they remained in the process of complying with their discovery obligations but would be ready to proceed to hearing and trial on the next date. Defense counsel also asked that the case be adjourned for hearing and trial—specifically, for a date in the middle of March. The court set the next appearance for March 15, 2023, and at that point instructed defendant, "Talk to your lawyer." (Since the transcript does not indicate what prompted the court's comment, it seems to have been in response to another attempt by defendant to draw the court's attention.) This resulted in the following exchange, beginning with the court's instruction:
THE COURT: March 15th for hearing and trial. Talk to your lawyer.

 DEFENDANT: I cannot talk to him. That's why I'm trying to talk to you. I 
 need a new attorney. Several messages, not answering the phone, several 
 e-mails.

 THE COURT: Any lawyer I give you will be busy or busier. I know your attorney is very good. Does very good work. He ordered hearings based upon his written work. You have to stick with this attorney. He's very good. I'm telling you.
DEFENDANT: I cannot do it with this attorney. I'm sorry.
THE COURT: Then you hire one. See you on the next date.
The case was then adjourned.
At the next appearance on March 15, 2023, defendant, represented by the same counsel, pleaded guilty to criminal possession of a firearm in exchange for a sentence of 1½ to 3 years in full satisfaction of the indictment. Defendant stated that no one had forced or threatened him to plead guilty and that he was doing so freely and voluntarily. He acknowledged that by pleading guilty he was giving up his trial rights, including the right to a jury trial; the right to confront adverse witnesses; the right to present any defense to the charges; the right to testify or remain silent; and the right to have the People prove his guilt beyond a reasonable doubt. He then admitted that on September 20, 2022, he possessed a firearm—namely, a .22 caliber pistol. Without objection, the court adjudicated defendant a second felony offender. The court did not ask defendant whether he was satisfied with his attorney or the representation he received, and defendant did not waive his right to appeal.
On May 31, 2023, defendant was sentenced as promised.
In October 2024, this Court granted defense counsel's motion to be relieved and for the assignment of substitute counsel on the ground that defendant had filed a CPL 440.10 motion in Supreme Court alleging that counsel had provided him with ineffective assistance.
II.
A.
On appeal, defendant contends that the court failed to provide him with an opportunity to articulate the basis for his request for new counsel during the January 25, 2023 court appearance or, alternatively, that the court failed to make a minimal inquiry as required. Defendant thus argues that he is entitled to vacatur of his conviction and plea.
The People argue that defendant abandoned and forfeited his challenge to the court's denial of his request for substitute counsel when he subsequently pleaded guilty while represented by the same attorney and did not raise the issue. The People alternatively argue, among other things, that defendant's complaints about his attorney were too vague to trigger the court's obligation to make a minimal inquiry (see People v Fredericks, 43 NY3d 551 [2025]; see also People v Gray, 223 AD3d 441 [1st Dept 2024], lv denied 41 NY3d 965 [2024]).
In reply, defendant emphasizes that Supreme Court did not permit him to fully express his concerns. Defendant also responds that it would be unreasonable to expect him to persist in raising the issue—whether during the plea proceeding or by letter between appearances—where the court had already delivered a summary denial (see People v Finch, 23 NY3d 408, 413 [2014] [a party "is not required, in order to preserve a point, to repeat an argument that the court has definitively rejected. When a court rules, a litigant is entitled to take the court at its word"] [internal citations omitted]). Further, defendant argues that this case is distinguishable from People v Fredericks (43 NY3d 551), as the court did not provide defendant with an opportunity to explain his issues, nor did the court undertake any additional inquiry whatsoever. Finally, defendant contends that case law fails to support the People's contention that the claim is forfeited or abandoned as a result of defendant's guilty plea (see e.g. People v Sides, 75 NY2d 822 [1990] [examining the claim on the merits despite the defendant's guilty plea]).
B.
"The right of an indigent criminal defendant to the services of a court-appointed lawyer does not encompass a right to appointment of successive lawyers at defendant's option" (id. at 824). "A defendant may be entitled to new counsel, however, upon showing good cause for a substitution, such as a conflict of interest or other irreconcilable conflict with counsel" (People v Washington, 25 NY3d 1091, 1095 [2015] [internal quotation marks and citation omitted]). "In determining whether good cause exists, [the] court must consider the timing of the defendant's request, its effect on the progress of the case and whether present counsel will likely provide the defendant with meaningful assistance" (People v Linares, 2 NY3d 507, 510 [2004]).
"Where a defendant makes a seemingly serious request for reassignment of counsel, the court must make at least a 'minimal inquiry' as to 'the nature of the disagreement or its potential for resolution' " (People v Miller, 225 AD3d 571, 571 [1st Dept 2024], lv denied 42 NY3d 929 [2024], quoting People v Porto, 16 NY3d 93, 100 [2010]). Generally, to trigger the "minimal inquiry" requirement, the defendant must provide specific factual allegations (see e.g. Porto, 16 NY3d at 100; see also Fredericks, 43 NY3d at 557-558).
However, the "minimal inquiry" requirement presumes a fair opportunity to be heard. The law, in other words, does not permit the court to satisfy its obligations in this area by refusing the defendant an opportunity to record a potentially serious request. Thus, if the court denies the defendant's "request for substitution of counsel without conducting any inquiry whatsoever, and without permitting defendant to explain, either orally or in writing, why such an inquiry might be necessary," the defendant's conviction should be vacated (People v McCummings, 124 AD3d 502, 502 [1st Dept 2015] [emphasis added]; see People v Hernandez-Molina, 219 AD3d 1232, 1233 [1st Dept 2023]; People v Resheroop, 209 AD3d 444, 444 [1st Dept 2022]; People v Branham, 59 AD3d 244, 245 [1st Dept 2009]; People v Rodriguez, 46 AD3d 396, 397 [1st Dept 2007], lv denied 10 NY3d 844 [2008]).
Here, the court summarily denied defendant's application without giving him a fair opportunity to be heard. Specifically, when defendant first asked to speak, the court ignored him altogether. When defendant made a second attempt, the court refused to permit him to address the issue and instead instructed him to "[t]alk to [his] lawyer." As the People acknowledge, defendant had to interrupt the proceeding on his third attempt to communicate even his most elemental "need [for] a new attorney."
In these circumstances, the People's contention that defendant forfeited his challenge because he did not raise his request for new counsel a fourth time at his plea proceeding, where the same judge presided, is unpersuasive. As defendant points out, right-to-counsel claims have been properly considered in cases where the defendant pleaded guilty while still represented by the same attorney (see e.g. Sides, 75 NY2d at 824; People v Branham, 59 AD3d 244).[FN1]
As noted, the People argue that the complaints defendant raised about his attorney at the January 25, 2023 proceeding are similar to those raised by the defendant in Fredericks. In Fredericks, the defendant, in a letter to the court, stated that his lawyer was not "working in [his] best interest," had declined to meet or video chat with him, and once "hung up the phone" on him (43 NY3d at 554). At the defendant's next appearance, the court informed defense counsel of defendant's letter and gave counsel an opportunity to respond to defendant's allegations (id. at 555).[FN2] Counsel "oppos[ed]" defendant's request and rebutted the allegations that defendant had made in his letter by outlining the efforts that counsel and his investigator had made to meet with defendant and review the case with him (id.). The court stated that it agreed with counsel and denied defendant's request for a new attorney without further inquiry (id.). The Court of Appeals affirmed, finding that the court was not required to conduct a minimal inquiry under the circumstances (id. at 554).
The Court in Fredericks held that the defendant's generalized complaints of communication issues with counsel did not trigger the court's duty to conduct a minimal inquiry (id. at 558). Yet, Fredericks did not dispense with the requirement that a defendant at least be given "an opportunity to state the basis" for their request for new counsel, regardless of whether that explanation would ultimately require a further inquiry (People v Bryan, 31 AD3d 295, 296 [1st Dept 2006]). Notably, Fredericks alternatively held that upon "consider[ing] defendant's letter and counsel's in-court explanation together," the trial court had "sufficient information to understand 'the nature of the disagreement' " (43 NY3d at 559, quoting Sides, 75 NY2d at 825).
Despite the initial seeming resemblance, the communication issue addressed in Fredericks is distinguishable from that raised in the present appeal. Unlike the statements and letter in Fredericks, which addressed the defendant's substantive complaints about his representation, defendant's statement here for why he could not "talk to" his attorney was—both temporally and substantively—a reply to the court's instruction that he "[t]alk to [his] attorney." The transcript thus demonstrates that defendant's response was one of limited scope. Put differently, the record shows that defendant's response concerned only whether he could speak to his attorney, not the central issue of why he needed a new one. As to this latter issue, defendant was never given an opportunity to be heard.
Accordingly, in contrast to Fredericks, where the Court incidentally had "sufficient information to understand the nature of the disagreement" (43 NY3d at 559), the court here "could not have known about the specifics of [defendant's] claim" because it gave him no chance to state them (McCummings, 124 AD3d at 503). The court therefore "had no basis to deny the application without hearing any explanation" of defendant's reasons for requesting new counsel (Branham, 59 AD3d at 245), regardless of whether those reasons would have been "too general and conclusory" to warrant a minimal inquiry if he had been permitted to give them (Fredericks, 43 NY3d at 558).
Significantly, following his January 25, 2023 appearance, defendant pleaded guilty before the same judge who had refused to hear his application for new counsel. Even though defendant was represented by the same attorney he claimed was ineffective at the immediately preceding appearance, the court failed to elicit, as is standard, whether defendant was satisfied with his attorney's performance (see e.g. NY Model Colloquies, Plea of Guilty, https://nycourts.gov/judges/cji/8-Colloquies/Plea_of_ Guilty.pdf [last accessed Mar. 3, 2026] [recommending inquiry as to satisfaction of representation]; see also People v Ubrich, 238 AD3d 1273, 1277 [3d Dept 2025] [court's failure to "ask defendant if he was willing to proceed with sentencing represented by assigned counsel despite the issues raised in his letters," including his request for substitute counsel, "cut against finding that defendant had abandoned the issues" before sentencing]). The People's reliance on People v Hampton (168 AD3d 559 [1st Dept 2019], lv denied 33 NY3d 949 [2019]) and People v Fernandez (218 AD3d 1257 [4th Dept 2023], lv denied 40 NY3d 1012 [2023]) is thus misplaced (see Hampton, 168 AD3d at 561 [notwithstanding the defendant's earlier request for new counsel, at the plea proceeding he answered in the affirmative regarding his satisfaction with defense counsel's representation]; Fernandez, 218 AD3d at 1260 ["defendant expressly declined to assert any disapproval of defense counsel's representation" at his plea proceeding "upon questioning by the court," notwithstanding earlier request for new counsel]).
The dissent's reliance on this Court's decision in People v McBride (151 AD3d 623 [1st Dept 2017], lv denied 30 NY3d 951 [2017]) and several Fourth Department cases is unconvincing as well. The main reason is that the dissent's authority highlights, rather than minimizes, the crucial distinction at play here—that is, the distinction between an opportunity to be heard and the court's refusal. In McBride, for example, the court had already addressed several "priorinquiries into defendant's complaints about the same attorney, and it declined to revisit the issue" (151 AD3d at 524). Likewise, in People v Kates (162 AD3d 1627, 1629 [4th Dept 2018]), "[t]he court repeatedly allowed defendant to air his concerns about defense counsel, and after listening to them reasonably concluded that [they] had no merit" (see also People v Wellington, 169 AD3d 1440, 1441 [4th Dept 2019], lv denied 33 NY3d 982 [2019], citing Kates, 162 AD3d at 1629).
Finally, although it is true that a reviewing court should consider whether "the timing and circumstances" of a defendant's request for a new attorney "suggest that it was a delaying tactic" (People v Zuniga, 149 AD3d 660, 660 [1st Dept 2017], lv denied 29 NY3d 1136 [2017]), defendant's case was in the early stages, as the People acknowledge. The circumstances of defendant's request for a new attorney are consequently distinguishable from cases like People v Gray (223 AD3d 441, 441 [1st Dept 2024], lv denied 41 NY3d 965 [2024]), where the defendant "made his request on the eve of trial, upon learning that the case would proceed to trial the following day, strongly suggest[ing] that the request was a delay tactic." In any event, even a defendant who appears to be using "delaying tactics . . . must at least be given an opportunity to state the basis for his application" (Bryan, 31 AD3d at 295-296; see Hernandez-Molina, 219 AD3d at 1233; Branham, 59 AD3d at 245). Defendant was given no such opportunity here.[FN3]
Under the circumstances, the court had no basis to deny defendant's request for new counsel without hearing any explanation. Defendant's conviction and plea should therefore be vacated, and the matter remanded for further proceedings.
Accordingly, the judgment of Supreme Court, New York County (Gregory Carro, J.), rendered May 31, 2023, convicting defendant, upon his plea of guilty, of criminal possession of a firearm, and sentencing him, as a second felony offender, to a term of 1½ to 3 years, should be reversed, on the law, defendant's plea vacated, and the matter remanded for further proceedings consistent with this opinion.
All concur except Webber, J.P. who dissents in an Opinion.

Webber, J.P. (dissenting).I would affirm the judgment convicting defendant, upon his plea of guilty, of criminal possession of a firearm, and sentencing him, as a second felony offender, to a prison term of 1½ to 3 years.
Defendant was charged by indictment with criminal possession of a .22 caliber firearm. Defendant admitted discarding the firearm at the intersection of Park Avenue and East 115th Street in New York County. Defendant was arraigned on the indictment on November 15, 2022.
On January 9, 2023, counsel for defendant, filed a 35-page motion to inspect the grand jury minutes, for a Mapp hearing challenging the officer's alleged seizure of defendant's property and firearm, and for a Huntley/Dunaway hearing seeking to suppress defendant's statements allegedly made to law enforcement.
On January 25, 2023, defendant appeared with counsel for the court's decision on the motion. After the attorneys gave their appearances for the record, defendant stated "Excuse me, Your Honor. Before we start, can I please approach the Court?"
The court explained that the case was on for decision on defendant's omnibus motion. The court granted defendant's motions for a Mapp/Huntley/Dunaway hearing as well as defendant's motion to inspect the grand jury minutes which the court deemed sufficient.
As defendant had apparently been arrested again, the court asked whether there was any information as to the new arrest. Counsel indicated that he had been assigned on that case as well and that he and defendant would be going to another court part to appear on that case. The People stated that they had no information on that new arrest.
The People stated that they were still in the process of complying with their discovery obligations but would be ready to proceed to hearings and trial by the next date. Defense counsel joined the People's request that the case be adjourned for hearing and trial.
THE COURT: March 15th for hearing and trial. Talk to your lawyer.
THE DEFENDANT: I cannot talk to him. That's why I'm trying to talk to you. I need a new attorney. Several messages, not answering the phone, several e-mails.
THE COURT: Any lawyer I give you will be busy or busier. I know your attorney is very good. Does very good work. He ordered hearings based upon his written work. You have to stick with this attorney. He's very good. I'm telling you.
THE DEFENDANT: I cannot do it with this attorney. I'm sorry.
THE COURT: Then you hire one. See you on the next date.
On March 15, 2023, defendant, while still represented by the same counsel, entered a plea of guilty to criminal possession of a firearm in exchange for a sentence of 1½ to 3 years, in full satisfaction of the indictment. Counsel stated that he was requesting an Investigation and Sentence report, which the court granted. Counsel then stated that his client had authorized him to withdraw his previously entered plea of not guilty and to enter a plea of guilty to criminal possession of a firearm.
The court then directed its attention to defendant, specifically asking him whether he in fact authorized his attorney to enter a plea of guilty on his behalf. Defendant stated that he did wish to plead guilty; that no one had forced or threatened him to plead guilty, and that he was pleading guilty freely and voluntarily. Defendant acknowledged that by pleading guilty, he was giving up his trial rights, including the right to a jury trial, the right to confront adverse witnesses, the right to present any defense to the charges, the right to testify or remain silent, and the right to have the People prove his guilt beyond a reasonable doubt. Defendant then admitted that on September 20, 2022, he possessed a firearm, namely, a .22 caliber pistol.
Without objection from the defense, and after defendant acknowledged a prior felony conviction for third-degree robbery in Kings County, Supreme Court in June 2019, the court adjudicated defendant a second felony offender. On May 31, 2023, defendant was sentenced as promised.
Defendant subsequently filed a CPL 440.10 motion in Supreme Court alleging ineffective assistance of counsel. Supreme Court denied the motion on March 12, 2025.[FN4]
Preliminarily, it is my opinion that defendant forfeited or abandoned his challenge to the court's denial of his request for substitute counsel by subsequently pleading guilty while represented by the same counsel and not expressing any disfavor with counsel (see People v Wellington, 169 AD3d 1440,1441 [4th Dept 2019], lv denied 33 NY3d 982 [2019] [the defendant abandoned request for substitution of counsel when he pleaded guilty while still being represented by the same attorney; see also People v Kates, 162 AD3d 1627, 1629 [4th Dept 2018], lv denied 32 NY3d 1065 [2018] [by deciding to plead guilty while still being represented by the same attorney, the defendant "abandoned his request for new counsel"]).
As stated above, some 49 days after the court's denial of defendant's request for substitute counsel, defendant entered a plea of guilty to the charge. At the time of the plea, defendant was specifically asked by the court whether or not he had authorized his attorney to enter a plea of guilty to the crime charged. At no time did defendant state that he had not authorized his attorney to enter the plea on his behalf or that he was in anyway dissatisfied with the representation by his attorney. At no time did counsel indicate that defendant was dissatisfied with counsel's representation or state that defendant was requesting a new attorney (see People v Lafferty, 227 AD3d 1480, 1481 [4th Dept 2024], lv denied 42 NY3d 928 [2024] [the defendant abandoned request for substitution of counsel when he pleaded guilty while represented by the same attorney]). Nor, at the time of defendant's sentencing, almost three-and-one-half months later, did defendant or his counsel indicate any issues with counsel's representation or request substitution of counsel. Under the circumstances presented, the court reasonably concluded that any issues with counsel's representation, had been resolved and defendant was no longer requesting substitution of counsel.
Any suggestion by the majority that defendant was reticent or somehow fearful of again asking the court for substitute counsel is mere speculation and is in no way supported by the record. The court never prevented defendant from voicing his complaints or in any way "shut him down." It simply stated that defendant and counsel should speak. The more obvious conclusion as to why defendant did not again raise the issue of substitute counsel is that any issues defendant had with counsel's representation had been resolved to his satisfaction and defendant no longer wanted substitute counsel. This is all the more apparent given that counsel was able to negotiate an extremely beneficial plea bargain for a second weapons conviction and one where defendant was allowed to remain free pending sentence.
Even assuming however, that defendant did not forfeit or abandon his claim for substitute counsel, defendant's generalized and conclusory complaint concerning counsel's representation did not require the court to engage in a minimal inquiry.
Defendant's statements: "I cannot talk to him. That's why I'm trying to talk to you. I need a new attorney. Several messages, not answering the phone, several e-mails," expressed only a generalized and conclusory complaint about counsel's representation and did not require the court to engage in a minimal inquiry (see People v Fredericks, 43 NY3d 551, 557-558 [2025]; People v Porto, 16 NY3d 93, 100, 101 [2010] ["vague, conclusory allegation[s] of 'frustration' . . . certainly d[o] not warrant" a substitution] citing People v Medina, 44 NY2d at 208 [1978] ["tensions between client and counsel" are not good cause]; People v Vega, 228 AD3d 467 [1st Dept 2024], lv denied 42 NY3d 1082 [2025] [the court properly summarily denied the defendant's requests for new counsel, as the defendant's conclusory allegations did not amount to "specific factual allegations" of serious complaints that triggered the court's duty to conduct a "minimal inquiry"]; People v Rodriguez, 161 AD3d 513, 513 [1st Dept 2018], lv denied 32 NY3d 941 [2018] [the defendant's allegations about the deterioration of his relationship with counsel were insufficiently specific to require the court to conduct a "minimal inquiry" into the nature of the disagreement]; People v Reed, 35 AD3d 194, 195 [1st Dept 2006], lv denied 8 NY3d 926 [2007] [the defendant's mere complaint that he and counsel did not get along and that counsel was working against him, did not warrant an inquiry]).
Contrary to the majority's characterization, the communication in this case bears more than a "seeming resemblance" to that in Fredericks (43 NY3d at 551). There, the defendant wrote a letter to the trial court requesting a new attorney. The defendant complained that his attorney ignored his video chat request and hung up the phone on him. The Court of Appeals held that the defendant's requests did not constitute specific factual allegations of serious complaints in that the defendant's statements did not suggest "a serious possibility of irreconcilable conflict" and "a complete breakdown of communication and lack of trust . . . in the[ ] relationship," which would give rise to the trial court's duty to conduct a minimal inquiry as to the nature of the conflict (Fredericks, 43 NY3d at 557, 558, citing People v Sides, 75 NY2d 822, 825 [2006]). Similarly, here, defendant's complaints that his attorney was not answering his calls or emails communicated mere frustration at his inability to contact counsel, and even if accepted as true, did not constitute good cause for substitution and did not warrant further inquiry (see Fredericks, 43 NY3d at 558-559).
In my opinion, the court providently considered and denied defendant's request.
It is well settled that "the right of an indigent criminal defendant to the services of a court-appointed lawyer does not encompass a right to appointment of successive lawyers at defendant's option" (Sides, 75 NY2d at 824). "A defendant may be entitled to new counsel, however, upon showing good cause for a substitution, such as a conflict of interest or other irreconcilable conflict with counsel" (People v Washington, 25 NY3d 1091, 1095 [2015] [internal quotation marks omitted]). In determining whether good cause exists, the court "must consider the timing of the defendant's request, its effect on the progress of the case and whether present counsel will likely provide the defendant with meaningful assistance" (People v Linares, 2 NY3d 507, 510 [2004]). A court may not have to perform any sort of inquiry if the court has "a clear picture of the 'nature of the disagreement' between defendant and counsel and its 'potential for resolution' " (People v Smith 192 AD2d 310, 311 [1st Dept 1993], affd 82 NY2d 731 [1993], citing Sides, 75 NY2d at 825). Here, defendant's statements provided the court with a clear picture of the issues and the potential for resolution.
The majority's statements that the court "summarily denied defendant's application without giving him an opportunity to be heard" is belied by the record. The record is clear that the court appropriately considered and responded to defendant's complaints and request for new counsel. The court explained to defendant why his complaints did not warrant substitute counsel in that any attorney that the court would appoint to replace his attorney would be just as busy or busier than his current attorney. The court also stated that counsel's performance on behalf of defendant had been very good and that multiple hearings had been ordered based upon counsel's motion to suppress evidence (see e.g. People v Hampton, 168 AD3d 559, 560 [1st Dept 2019], lv denied 33 NY3d 949 [2019] [the court reviewed the proceedings to demonstrate to the defendant the work his counsel had done on his behalf, assured the defendant that his attorney would communicate with him, and directed defense counsel to ensure adequate communication]).
In denying defendant's request, the court had a clear picture of the nature of the disagreement between defendant and counsel. Defendant's statements indicated his frustrations with what he felt were counsel's inadequate responsiveness to his telephone calls and emails. They did not indicate a breakdown in the relationship. Additionally, at such an early stage in the proceedings, i.e., the first appearance after defendant's Supreme Court arraignment, the court's direction for defendant and his counsel to speak to each other was appropriate and a practical attempt at a potential resolution.
Whether counsel is substituted is within the "discretion and responsibility" of the trial judge (see Porto, 16 NY3d at 99, citing Medina, 44 NY2d at 207). In my opinion, the court's sound discretion in denying defendant's request for substitution of counsel should not be disturbed.
Judgment, Supreme Court, New York County (Gregory Carro, J.), rendered May 31, 2023, reversed, on the law, defendant's plea vacated, and the matter remanded for further proceedings consistent with this opinion.
Opinion By Rodriguez, J. All concur except Webber, J.P. who dissents in separate Opinion.
Webber, J.P., Kennedy, Mendez, Rodriguez, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 24, 2026

Footnotes

Footnote 1: A number of the dissent's cited cases from the Fourth Department on this point expressly pertain to substitution requests fully or successively heard by the lower courts (see e.g. People v Kates, 
162 AD3d 1627, 1629 [4th Dept 2018] ["The court repeatedly allowed defendant to 
air his concerns about defense counsel"], lv denied 32 NY3d 1065 [2018], cert denied 
-- US --, 141 S Ct 117 [2020]). In any event, these cases are ultimately reliant on People v Hobart, 
a case which alternatively held only that "it appear[ed] that defendant abandoned his request for a substitution of counsel" (286 AD2d 916, 916 [4th Dept 2001], lv denied 97 NY2d 683 [2001]; see e.g. People v Lafferty, 227 AD3d 1480, 1481 [4th Dept 2024], lv denied 42 NY3d 928 [2024], citing Hobart, 286 AD2d at 916).

Footnote 2: Indeed, the Fredericks Court noted that 
"an attorney . . . should be afforded the opportunity to explain [their] performance" (43 NY3d at 560 [internal quotation marks omitted]).

Footnote 3: Our conclusion in this respect is no reproach, as we are well aware of the myriad demands, limited time, and busy calendars of Supreme Court. Additionally, we agree with the dissent's perception of the court as making 
"a practical attempt at a potential resolution." Nevertheless, the court's intent is immaterial, and the record reflects that defendant was not provided a fair opportunity to explain.

Footnote 4: Defendant initially filed a CPL 440 motion in this Court to vacate his conviction on the ground that counsel's representation below constituted ineffective assistance of counsel. The motion was returned with instructions to file it in Supreme Court.