This memorandum is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------

No. 110
The People &c.,
          Respondent,
        v.
Kareem Washington,
          Appellant.


          Kami Lizarraga, for appellant.
          Marc I. Eida, for respondent.


MEMORANDUM:

          The order of the Appellate Division should be affirmed.

          Defendant Kareem Washington was arrested in 2008 in connection with a gunpoint robbery that occurred in the Bronx. Prior to trial, he filed a pro se motion seeking new defense counsel; defendant's application included a form "Affidavit in

- 1 -

Support of Motion for Reassignment of Counsel," in which he circled every one of the 10 possible grounds of ineffectiveness listed.  Defendant also included a "Statement of Facts," in which he alleged that his attorney "failed to produce . . . discovery materials" and "denied to formulate an Omnibus motion to contest . . . lack of identification, or to preserve requested pre-trial hearings."  Defendant further asserted that his attorney ignored his requests to counter "the lack of identification and the negative results of the DNA test," and "refused to take heed to defendant's factual version of events, and to further discuss or develop possible defense strategies beneficial to him."  The motion papers were postmarked May 14, 2011, about six weeks before trial, but defendant mailed the materials to "Part 80," and the trial was moved to Part 13.  Although it is not clear from the record whether defense counsel or the District Attorney actually received the papers prior to trial, defendant did not mention the motion to Supreme Court or counsel before or during trial.

On July 7, 2011, a jury convicted defendant of first-degree robbery (Penal Law § 160.15).  At the sentencing hearing on July 28, 2011, the judge advised the People and defense counsel that he had received the pro se motion four days after the guilty verdict.  Supreme Court asked defense counsel if he wanted to comment on the motion, to which counsel responded that he "d[id]n't want to put [him]self in opposition to [defendant]."

Counsel added that certain items in the motion were "incorrect," but he did not elaborate.

The judge then asked defendant why he did not call attention to the motion or any of his complaints. Defendant claimed that he had tried to talk with the judge about the motion before trial, but a court officer prevented him. The judge expressed disbelief about this explanation and noted that, in any event, the defendant "had many, many, many, many other moments after that" when he and the judge "spoke[] person to person and [defendant] never raised this." On the merits, the judge viewed defendant's allegations skeptically, "based on [his] observations during the course of the trial." Specifically, the judge addressed defendant as follows:

> "You say things in here that are not true. You say that you had no discovery. It was evident to me that you had discovery. It was evident to me you had all the discovery. You complained about negative DNA results. The testimony in the trial is that there [were] positive DNA results. You complained that [your attorney] didn't discuss strategy with you. I know he discussed strategy with you. I don't see anything in here based on my observations during the course of the trial that any of this is true."

The judge then invited defendant to air his complaints of ineffective assistance. Defendant asserted that defense counsel "never did discuss any strategy" with him before trial, despite defendant's numerous requests. Defendant also alleged that counsel failed to meet with him before trial, except for a "seven to eight minute[]" video conference a week or two

beforehand, during which he and his attorney didn't really "connect." Apart from this video conference, defendant complained, he "never really had a chance to discuss anything with [counsel] prior to being in court." Finally, defendant alleged that his attorney provided him only "some of the discovery" that he had sought. Defendant eventually admitted, however, that he did receive the discovery he requested.

The judge next asked defense counsel to respond to defendant's statements, and counsel explained what he had done prior to trial; specifically, he

> "recall[ed] speaking to [defendant] on the phone. The video conference was, in fact, we had one, it was longer than that. The only problem was they had delivered [defendant] late to the conference area and I think it went for about fifteen minutes or so. From the outset, I think it's pretty clear that strategy here was to indicate to the jury that the identification was incorrect. We challenged identification here during the hearing before the trial, cross examination dealt with identification. I think that was clearly what the strategy was according to what [defendant] was dealing with."

The judge also asked defense counsel if he discussed trial strategy with his client and if he provided defendant with discovery. Counsel stated that he was "sure" he discussed strategy with defendant before trial, and that he gave defendant "a good deal of discovery," "everything I had up until the beginning of trial."

Supreme Court summarized that while defendant claimed that his attorney "refused to take heed to the defendant's

factual version of events and to further discuss or develop possible strategies beneficial to the defendant, [defense counsel] says that happened and the defense of lack of identification was presented at the trial."  The judge also noted that defense counsel stated that he had given defendant all the discovery materials he possessed, once he had them.  The judge commented that the motion was untimely and, in any event, "from what [he] heard from [defendant] and [counsel], [he] would not have granted the motion" because defendant had not been truthful about what his attorney "did and did not do," and he "accept[ed]" defense counsel's version of events.  Indeed, the judge added, he had observed that defendant "c[a]me into court every day with discovery in [his] hands, consulted with counsel during jury selection and trial, [and] decided not to testify after conferring with counsel."

Based on his personal observations and inquiry, the judge denied defendant's motion and sentenced him as a persistent felony offender to an indeterminate prison term of twenty-two years to life.  Defendant appealed, and the Appellate Division affirmed (115 AD3d 451 [1st Dept 2014]).  The court determined that the verdict was not against the weight of the evidence and, relying on People v Nelson (7 NY3d 883 [2006]), that defendant was not deprived of the effective assistance of conflict-free counsel when his attorney explained the actions he took on his client's behalf.  A Judge of this Court granted defendant leave

to appeal (24 NY3d 965 [2014]), and we now affirm.

"The right of an indigent criminal defendant to the services of a court-appointed lawyer does not encompass a right to appointment of successive lawyers at defendant's option" (People v Sides, 75 NY2d 822, 824 [1990]).  A defendant may be entitled to new counsel, however, "upon showing good cause for a substitution, such as a conflict of interest or other irreconcilable conflict with counsel" (id. [internal quotation marks omitted]).  Here, defendant claims that he was entitled to new defense counsel because counsel's responses to the allegations of ineffectiveness created an actual conflict of interest.

Although an attorney is not obligated to comment on a client's pro se motions or arguments, he may address allegations of ineffectiveness "when asked to by the court" and "should be afforded the opportunity to explain his performance" (People v Mitchell, 21 NY3d 964, 967 [2012]; Nelson, 7 NY3d at 884). We have held that counsel takes a position adverse to his client when stating that the defendant's motion lacks merit (Mitchell, 21 NY3d at 966), or that the defendant, who is challenging the voluntariness of his guilty plea, "made a knowing plea . . . [that] was in his best interest" (People v Deliser, decided with Mitchell, 21 NY3d at 966).  Conversely, we have held that counsel does not create an actual conflict merely by "outlin[ing] his efforts on his client's behalf" (People v Nelson, 27 AD3d 287,

287 [1st Dept 2006], affd Nelson, 7 NY3d at 884) and "defend[ing] his performance" (Nelson, 7 NY3d at 884).

Applying these settled principles to the facts in this case, we conclude that defense counsel's comments in response to the judge's questions did not establish an actual conflict of interest. Defense counsel did not suggest that his client's claims lacked merit. Rather, he informed the judge when he met with defendant and for how long, what they discussed, what the defense strategy was at trial and what discovery he gave or did not give to defendant. Thus, he never strayed beyond a factual explanation of his efforts on his client's behalf.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, in a memorandum. Chief Judge Lippman and Judges Read, Pigott, Rivera, Abdus-Salaam, Stein and Fahey concur.

Decided June 25, 2015