People v Fredericks (2025 NY Slip Op 01011)

People v Fredericks

2025 NY Slip Op 01011 [43 NY3d 551]

February 20, 2025

Troutman, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, September 3, 2025

[*1]

The People of the State of New York, Respondent,
v
Divine Fredericks, Appellant.

Argued January 8, 2025; decided February 20, 2025

PROCEDURAL SUMMARY

Appeal, by permission of an Associate Judge of the Court of Appeals, from an order of the Appellate Division of the Supreme Court in the First Judicial Department, entered June 22, 2023. The Appellate Division affirmed (1) a judgment of the Supreme Court, Bronx County (Efrain Alvarado, J., at request for new counsel; Margaret L. Clancy, J., at jury trial and sentencing), which had convicted defendant, upon a jury verdict, of murder in the second degree, attempted murder in the second degree and criminal possession of a weapon in the second degree; and (2) an order of that Supreme Court (Margaret L. Clancy, J.), which had denied defendant's CPL 440.10 motion to vacate the judgment.

People v Fredericks, 217 AD3d 582, affirmed.

HEADNOTES

Crimes
 - Right to Counsel
 - Complaints About Counsel
 - Minimal Inquiry

1. In a criminal prosecution in which defendant wrote a letter to the trial court expressing frustration with his assigned counsel, defendant's complaints about his attorney were not factually specific and serious enough to require the court to engage in a minimal inquiry as to the nature of the disagreement or its potential for resolution. Defendant's assertions that counsel was not working in his best interest, was prolonging the proceedings, and was advising him to take a plea were too general and conclusory to require a minimal inquiry. There were no facts elucidating those allegations that would have signaled to the trial court that a serious conflict emerged between defendant and his counsel. The seriousness of defendant's allegation that counsel failed to visit him was undermined by other statements in the letter, which clearly indicated that counsel and his private investigator were communicating with defendant. Moreover, defendant failed to explain how defense counsel allegedly disrespected him and his wife. Nor did he provide any context regarding defense counsel allegedly hanging up on him. In any event, the court conducted a minimal inquiry when it inquired further into the purported issues between defendant and counsel. The court considered defendant's letter and counsel's in-court explanation together, which provided it sufficient information to understand the nature of the disagreement and conclude that there was not a genuine conflict or that any conflict was reconcilable.

Crimes
 - Right to Counsel
 - Actual Conflict of Interest
 - Counsel's Response to Defendant's Complaints

2. In a criminal prosecution, assigned defense counsel's statements to the trial court in response to complaints from defendant contained in a letter to the court did not create an actual conflict of interest requiring substitution of counsel. Where the defendant challenges counsel's performance, assigned counsel does not take a position adverse to their client by merely outlining their efforts on their client's behalf in a defense of their performance. At the first call, the court asked defense counsel whether he had a chance to review defendant's substitution motion and whether he was "adopting the motion." After recalling the case, the court again inquired about defendant's motion. Although counsel stated that he was "opposing" defendant's substitution motion, he followed up his statement by recounting his efforts on defendant's behalf, explaining that he had discussed the case a "number of times" with defendant and merely gave him an "honest assessment of the case." Viewing defense counsel's statements in context, counsel was not opposing defendant's motion, but rather was opposing defendant's allegations concerning counsel's allegedly deficient performance and, in response to the court's specific query, declining to adopt the motion. Furthermore, counsel's remark about "shooting the messenger" did not amount to an assessment of the motion's merits. The statement was a defense of counsel's performance and was intended to provide the trial court with a factual explanation of defendant's complaints, which would inform the court's resolution of the motion.

POINTS OF COUNSEL

Jenay Nurse Guilford, Center for Appellate Litigation, New York City (V. Marika Meis of counsel), for appellant. I. Divine Fredericks' "seemingly serious request" for new counsel warranted a minimal inquiry, particularly where counsel opposed the application and made unsolicited comments opposing it. (People v Porto, 16 NY3d 93; Gideon v Wainwright, 372 US 335; People v Medina, 44 NY2d 199; Wheat v United States, 486 US 153; People v Sawyer, 57 NY2d 12.) II. Counsel's conduct impermissibly took a position adverse to Divine Fredericks' demanding a new trial. (People v Mitchell, 21 NY3d 964; People v Washington, 25 NY3d 1091; People v Ortiz, 76 NY2d 652; People v Carncross, 14 NY3d 319.) III. The trial court abused discretion in summarily denying Divine Fredericks' pro se Criminal Procedure Law § 440.10 motion. (Montes v Manufacturers Hanover Trust Co., 197 AD2d 357; Lancaster v Kindor, 65 NY2d 804; Rosen v Raum, 164 AD2d 809; People v Roberts, 143 AD3d 843; Walker v Schult, 717 F3d 119.)
Darcel D. Clark, District Attorney, Bronx (Nicole Neckles, Yael V. Levy and Rafael Curbelo of counsel), for respondent. I. The trial court prudently denied defendant's application for substitute counsel on a sufficiently developed record when after reviewing the generic, conclusory allegations in the application, speaking with counsel, and considering the history of the case, it found no genuine conflict of interest requiring appointment of substitute counsel. (Morris v Slappy, 461 US 1; People v Sawyer, 57 NY2d 12; People v Sides, 75 NY2d 822; People v Watson, 26 NY3d 620; McKee v Harris, 649 F2d 927.) II. No conflict of interest was created by counsel's explanation, in response to defendant's request for substitute counsel, of the extent to which he had discussed the case with defendant and of his impression that defendant was unhappy with his assessment of the case. (People v Ortiz, 76 NY2d 652; People v Rozzell, 20 NY2d 712; People v Mitchell, 2 NY3d 272; People v Sykes, 204 AD3d 1244, lv denied 38 NY3d 1136; People v Safford, 74 AD3d 1835.) III. The record amply supports the trial court's discretionary denial without a hearing of defendant's post-conviction motion raising unsubstantiated and implausible ineffective assistance of counsel allegations. (People v Session, 34 NY2d 254; People v Tiger, 32 NY3d 91; People v Bachert, 69 NY2d 593; People v Satterfield, 66 NY2d 796; People v Jones, 24 NY3d 623.)

{**43 NY3d at 554} OPINION OF THE COURT

Troutman, J.

This appeal presents us with two primary issues. The first is whether defendant's complaints about his assigned counsel were factually specific and serious enough to require the trial court to engage in a "minimal inquiry" as to "the nature of the disagreement or its potential for resolution" (People v Sides, 75 NY2d 822, 825 [1990]). The second is whether defendant was entitled to substitution of counsel based on defense counsel's statements on the record responding to those complaints. Because we conclude that no minimal inquiry was required and that the trial court properly denied defendant's request for new counsel, we affirm.
I.
Defendant and a friend of his were riding in the backseat of a vehicle early one morning after a night of drinking. While still inside the car, defendant allegedly shot the front-seat passenger in the back of the head and the driver in the chest and jaw. Defendant and his friend fled. The front-seat passenger died from his injuries, but the driver survived. Defendant thereafter was indicted on numerous counts and assigned counsel.
Several months into the proceeding, defendant wrote a letter to the trial court, expressing frustration with his attorney:
"Your Honor my assigned attorney isn't in fact working in my best interest[.] I do not want to keep prolonging these proceedings any longer[.] [M]y attorney disregarded my request of counsel visit even via Video [sic]. He also hung up the phone on me [and][*2][d]isrespected my wife as well as myself[.] [M]y attorney is aware that I do not want him on my case any longer[,] which is why he keeps prolonging the proceedings[,] as well as my November 13, 2018 court appearance. Your Honor it is clear he is not working in my best interest to where I believe you noticed it when you have been addressing the District Attorney on not being ready for the pre-trial hearings[,] and my attorney is in fact arguing the issue for the District Attorney."
In the same letter, defendant requested that he "be assigned a new attorney that is going to fight to get the truth out . . . {**43 NY3d at 555}because [he was] in fact innocent." Defendant stated that "all" counsel was telling him was to "help [him]self or accept a plea," and that "these are not statements an attorney should in fact make to his client when the client is in fact innocent."
At the next court appearance, the court informed defense counsel that defendant had filed a pro se letter application and asked if counsel had an opportunity to review it and whether he was adopting it. Counsel responded that he had never seen the letter. The court thus gave counsel a chance to "examine" the motion and "make a determination whether it has legal merit for [counsel] to adopt it." When the case was recalled, the court stated that it had reviewed the motion and that "one of the items contained in the motion [was] a request for a new attorney." A colloquy ensued, during which defense counsel stated as follows:
"Well, I'm opposing to that [sic]. I want to put on the record, Judge, that, you know, sometimes you want to shoot the messenger as opposed—you know, because you don't like the message. I, and my investigator, . . . have gone over this stuff with [defendant] any number of times. And we have gone through everything and [defendant] just doesn't like what I have to tell him. I'm required to give him an honest assessment of the case."
The court stated that defense counsel was "correct," noting that the investigator to whom counsel referred was a "well respected" former police officer. The court then asked defendant whether he wished to retain a private attorney. Defendant responded that he wanted a new attorney but lacked the funds to hire one. The court explained to defendant that the State was paying for an experienced attorney on defendant's behalf. The court thus denied defendant's request for a new attorney but advised defendant that, should he "come into funds," he could hire defense counsel of his choice.
A jury trial was held with the same counsel serving as defendant's attorney. The jury ultimately returned a verdict finding defendant guilty of murder in the second degree (Penal Law § 125.25), attempted murder in the second degree (id. §§ 110.00, 125.25), and criminal possession of a weapon in the second degree (id. § 265.03).
Following sentencing, defendant, acting pro se, moved to vacate the judgment pursuant to CPL 440.10. Defendant argued, among other things, that his trial counsel was ineffective{**43 NY3d at 556} for allegedly failing to prepare him for trial, failing to impeach the driver's testimony at trial, and failing to contact or call as a witness defendant's friend who had been riding with him in the backseat. The People opposed, observing that defendant's allegations regarding counsel's ineffectiveness were not supported by anything other than defendant's self-serving affidavit.
Supreme Court denied defendant's motion without holding a hearing. The court observed that many of defendant's contentions concerning ineffective assistance of counsel were based on and contradicted by the record. To the extent defendant raised arguments that were not record-based, the court observed that defendant failed to provide, or explain his failure to provide, an affidavit substantiating the essential facts supporting his claim through sworn allegations by his trial counsel (see CPL 440.30 [1]). Although the court acknowledged that "[a]n affidavit from counsel is not necessary where a defendant's claim is hostile and adverse to trial counsel, where [the] defendant sufficiently explains the absence of an affidavit, and where [the] defendant's allegations are corroborated by other parts of the record," the court concluded that there was nothing in the record or defendant's submissions corroborating his allegations regarding counsel.
The Appellate Division affirmed both the judgment and the order (see 217 AD3d 582 [1st Dept 2023]). As relevant here, the Appellate Division held that the trial court "providently exercised its discretion in denying defendant's request for new counsel" and that "[d]efendant 'failed to proffer specific allegations of a seemingly serious request that would require the court to engage in a minimal inquiry' " (id. at 583, quoting People v Porto, 16 NY3d 93, 100 [2010]). Additionally, the Appellate Division concluded that the court did not abuse its discretion in [*3]denying defendant's CPL 440.10 motion without conducting a hearing, acknowledging that defendant failed to obtain an affidavit from defense counsel or indicate that he unsuccessfully attempted to do so and, in any event, defendant failed to raise a factual dispute warranting a hearing.
A Judge of this Court granted leave to appeal (40 NY3d 1039 [2023]).
II.
Defendant contends that Supreme Court erred in denying his request for new counsel without conducting a minimal inquiry.{**43 NY3d at 557} We reject that contention. It is well settled that, under both the Federal and New York State Constitutions, an indigent defendant is guaranteed the right to counsel (see US Const 6th Amend; NY Const, art I, § 6; see also People v Medina, 44 NY2d 199, 207 [1978]). However, "[t]he right of an indigent criminal defendant to the services of a court-appointed lawyer does not encompass a right to appointment of successive lawyers at [the] defendant's option" (People v Washington, 25 NY3d 1091, 1095 [2015], quoting Sides, 75 NY2d at 824; see People v Sawyer, 57 NY2d 12, 18-19 [1982] ["(T)he right to assistance of counsel . . . is not to be equated with a right to choice of assigned counsel"]). Rather, a defendant may be entitled to new counsel only "upon showing good cause for a substitution, such as a conflict of interest or other irreconcilable conflict with counsel" (Washington, 25 NY3d at 1095, quoting Sides, 75 NY2d at 824; see Medina, 44 NY2d at 207).
"While a court has a duty to investigate complaints concerning counsel, 'this is far from suggesting that an indigent[ ] [defendant's] request that a court assign new counsel is to be granted casually' " (Porto, 16 NY3d at 99, quoting Sawyer, 57 NY2d at 19). The decision to substitute counsel remains "within the 'discretion and responsibility' of the trial judge" (id., quoting Medina, 44 NY2d at 207), and the trial court's obligation to consider a motion to substitute counsel arises only where the defendant makes a "seemingly serious request[ ]" (Sides, 75 NY2d at 824). Thus, where the defendant comes forth with "specific factual allegations of 'serious complaints about counsel' " (Porto, 16 NY3d at 100, quoting Medina, 44 NY2d at 207; see People v Smith, 30 NY3d 1043, 1044 [2017]), the trial court must conduct "at least a 'minimal inquiry,' and discern meritorious complaints from disingenuous applications by inquiring as to 'the nature of the disagreement or its potential for resolution' " (Porto, 16 NY3d at 100, quoting Sides, 75 NY2d at 825).
In considering what types of complaints trigger the minimal inquiry requirement, we held in Sides that statements made by the defendant and defense counsel, "suggest[ing] a serious possibility of irreconcilable conflict" and "a complete breakdown of communication and lack of trust . . . in the[ ] relationship," gave rise to the trial court's duty to conduct a minimal inquiry as to the nature of the conflict (75 NY2d at 825). Conversely, in Porto, we held that no minimal inquiry was required where the defendant filled out a pro se motion form requesting new{**43 NY3d at 558} counsel by circling three preprinted grounds for substitution, and the assigned counsel merely indicated "his belief that defendant's motion was based on 'frustration' " (16 NY3d at 97).
[1] Against this backdrop, defendant argues that the complaints contained in his letter were factually specific and serious enough to require a minimal inquiry. He points to his accusations that defense counsel was not working in his best interest; disregarded his request to visit, "even via [v]ideo"; hung up on him; disrespected him and his wife; was prolonging the proceedings; and told him to accept a plea even though he was "in fact innocent." Contrary to defendant's contention, these statements did not constitute "specific factual allegations of 'serious complaints about counsel' " (id. at 100, quoting Medina, 44 NY2d at 207). Defendant's assertions that counsel was not working in his best interest, was prolonging the proceedings, and was advising him to take a plea were too general and conclusory to require a minimal inquiry. There are simply no facts elucidating these allegations that would have signaled to the trial court that a serious conflict emerged between defendant and his counsel.
Defendant's remaining complaints similarly were not sufficiently specific and serious. The seriousness of defendant's allegation that counsel failed to visit him was undermined by other statements in the letter, which clearly indicated that counsel and his private investigator were communicating with defendant. Moreover, defendant failed to explain how defense counsel allegedly disrespected him and his wife. Nor did he provide any context regarding defense counsel allegedly hanging up on him. For instance, it is entirely unclear whether defense counsel intentionally or inadvertently hung up on defendant or whether defense counsel simply hung up because the conversation had ended. In this respect, defendant's complaints are akin to the preprinted allegations circled by the defendant in Porto: they lacked sufficient elaboration to signal to the trial court that the complaints were serious enough to warrant minimal inquiry (see id.). We thus disagree with the dissent's and defendant's attempt to equate [*4]the facts of this case to the "serious possibility of irreconcilable conflict" present in Sides (75 NY2d at 825).[FN1] In our view, the trial court was entitled to review defendant's letter in its entirety and glean{**43 NY3d at 559} from its substance and tone that defendant's complaints merely reflected his dissatisfaction with counsel's advice rather than "a complete breakdown of communication and . . . trust" warranting a minimal inquiry (id.).[FN2]
In any event, the court conducted a minimal inquiry when, in response to defendant's letter, it inquired further into the purported issues between defendant and counsel. Contrary to the dissent's assessment that the trial court failed to " 'discern' whether defendant's complaints were 'meritorious' " (dissenting op at 
565, quoting Porto, 16 NY3d at 100), the court considered defendant's letter and counsel's in-court explanation together, which provided it sufficient information to understand "the nature of the disagreement" (Sides, 75 NY2d at 825) and conclude that there was not a genuine conflict or that any conflict was reconcilable. To the extent the dissent contends that the court's inquiry failed to meet the minimal inquiry standard, we emphasize that a minimal inquiry need only be that: minimal. The record demonstrates that the trial court met this minimal requirement.
[2] We reject defendant's further contention that counsel's statements to the court in response to defendant's complaints created an actual conflict requiring substitution of counsel. Where assigned counsel takes a position on a pro se motion that is adverse to their client, "a conflict of interest arises, and the court must assign a new attorney to represent the defendant on the motion" (People v Mitchell, 21 NY3d 964, 967 [2013];{**43 NY3d at 560} see Washington, 25 NY3d at 1095). "Although an attorney is not obligated to comment on a client's pro se motions or arguments, [they] may address allegations of ineffectiveness 'when asked to by the court' and 'should be afforded the opportunity to explain [their] performance' " (Washington, 25 NY3d at 1095, quoting Mitchell, 21 NY3d at 967; see People v Nelson, 7 NY3d 883, 884 [2006]).
We have held that counsel takes a position adverse to their client where counsel states that the defendant's pro se motion lacks merit (see Mitchell, 21 NY3d at 966) or where counsel states, in response to the defendant's challenge to the voluntariness of a guilty plea, that the defendant's plea was knowing and in their best interest (People v Deliser, 21 NY3d 964, 966 [2013] [decided with Mitchell]). Conversely, where the defendant challenges counsel's performance, assigned counsel does not take a position adverse to their client by merely "outlining [their] efforts on [their] client's behalf" (People v Nelson, 27 AD3d 287, 287 [1st Dept 2006], affd 7 NY3d 883 [2006]) in a "defen[se] [of their] performance" (Nelson, 7 NY3d at 884; see Washington, 25 NY3d at 1095).
Defendant asserts that his counsel took a position adverse to him by opposing defendant's pro se motion to substitute counsel and "put[ting] on the record" that defendant was "shoot[ing] the messenger" because he did not like what defense counsel "ha[d] to tell him." In defendant's view, these statements not only indicated that counsel opposed his motion, but also that counsel believed defendant's motion lacked merit, creating a conflict that required substitution (see Mitchell, 21 NY3d at 966).
[*5]
Although counsel's statements were perhaps inartful, we conclude that they did not establish an actual conflict of interest. At the first call, the court asked defense counsel whether he had a chance to review defendant's substitution motion and whether he was "adopting the motion." After recalling the case, the court again inquired about defendant's motion. Although counsel stated that he was "opposing" it, he followed up his statement by recounting his efforts on defendant's behalf, explaining that he had discussed the case a "number of times" with defendant and merely gave him an "honest assessment of the case." Viewing defense counsel's statements in context, we conclude that counsel was not opposing defendant's motion, but rather was opposing defendant's allegations concerning counsel's allegedly deficient performance and, in response to{**43 NY3d at 561} the court's specific query, declining to adopt the motion. Furthermore, counsel's remark about "shooting the messenger" did not amount to an assessment of the motion's merits. Defendant's interpretation stretches counsel's words beyond their practical meaning. In our view, the statement was a defense of counsel's performance and was intended to provide the trial court with a "factual explanation" of defendant's complaints, which would inform the court's resolution of the motion (Washington, 25 NY3d at 1095).
III.
Contrary to defendant's last contention, the court properly denied his CPL 440.10 motion without a hearing. "A CPL 440.10 motion asserting an ineffective assistance of counsel claim 'must contain sworn allegations [alleging that the conviction was obtained due to deficient attorney performance that violated the State or Federal Constitutions], whether by the defendant or by another person or persons' " (People v Delorbe, 35 NY3d 112, 121 [2020], quoting CPL 440.30 [1] [a]). A court may deny a CPL 440.10 motion without a hearing if "the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts" (CPL 440.30 [4] [b]; see Delorbe, 35 NY3d at 121; People v Satterfield, 66 NY2d 796, 799 [1985]). We review "the summary denial of a CPL article 440 motion under an abuse of discretion standard" (People v Wright, 27 NY3d 516, 520 [2016]; see People v Jones, 24 NY3d 623, 630 [2014]).
Contrary to defendant's assertion, the courts below correctly concluded that—in addition to defendant's failure to provide an affirmation from defense counsel or explain the absence thereof—defendant's claims of ineffectiveness were otherwise not corroborated by the record and were solely supported by his self-serving affidavit (see CPL 440.30 [4] [b]; Delorbe, 35 NY3d at 121). The court therefore properly acted within its discretion in summarily denying defendant's CPL 440.10 motion.
Accordingly, the order of the Appellate Division should be affirmed.

Rivera, J. (dissenting).
Defendant requested appointment of new counsel, alleging that his appointed counsel refused to meet with him, even by video; hung up on him and disrespected his wife; was not working in his best interest but rather was serving as a second prosecutor; wanted defendant to plead guilty despite defendant's claims that he was innocent and{**43 NY3d at 562} wanted counsel to prepare a defense; and was delaying the proceedings rather than expeditiously moving the case to trial because counsel knew that defendant wanted to replace him. Counsel confirmed for the court that defendant was [*6]unreceptive to his efforts, rejected his advice, and was unwilling to accept his view of the case. Defendant's allegations and counsel's response suggest an irreconcilable conflict, a breakdown in communication, and a loss of defendant's trust in counsel. If these are not "specific factual allegations of 'serious complaints about counsel' " sufficient to trigger the court's duty to make a minimal inquiry on the state of the professional relationship, it is difficult to see what would be (People v Porto, 16 NY3d 93, 100 [2010], quoting People v Medina, 44 NY2d 199, 207 [1978]). The majority's decision does not comport with our precedent. A defendant's allegations need only "suggest[ ]" a significant conflict with appointed counsel to mandate the court's inquiry (People v Sides, 75 NY2d 822, 825 [1990]). Here, the majority faults defendant because his written allegations' "substance and tone" did not convince a skeptical court (majority op at 
558-559). Our precedent establishes a standard meant to safeguard a defendant's right to counsel, not to excuse ineffectiveness or normalize a broken attorney-client relationship.
I dissent.
I.
Defendant was convicted of second-degree murder, attempted second-degree murder, and second-degree criminal possession of a weapon, all related to a shooting inside a car in which he was a passenger. Defendant maintained his innocence, contending that he had been dropped off and that someone else was the shooter. On this appeal, we are concerned with the court's response to defendant's pretrial request for new counsel.
Several months before trial, defendant wrote to the court alleging, among other things, that his counsel failed to meet with him and to advocate aggressively for his defense. Counsel was defendant's original assigned lawyer and the letter included defendant's first request for substitution of counsel. In support of that request, defendant wrote that counsel was not working in his best interest, disregarded his request for a visit even by video, hung up the phone on him, and disrespected both him and his wife. Defendant stated that counsel was delaying the proceedings because counsel was aware that defendant{**43 NY3d at 563} wanted another lawyer. Defendant added that counsel was excusing the prosecution's failure to be ready for pretrial hearings. He also asserted that he had not received discovery materials necessary for him to prepare an adequate defense and implored the court to "look into these plain and simple facts." Defendant stated several times that he was innocent but that his attorney merely told him to "help [him]self or accept a plea"—statements that defendant viewed as appropriate for a second prosecutor, not a defense attorney.
At the next appearance, the court asked if counsel was adopting defendant's pro se motion and after the case was put on for a second call so that he could review the letter, counsel opposed the motion. Unprompted, counsel stated that defendant wanted to "shoot the messenger" because he did not like the message. Counsel added that he and his investigator "had gone over this stuff with [defendant] any number of times" but defendant "just [did]n't like what [he had] to tell him." The court responded that counsel was "quite right" and remarked that his investigator was "well-respected," "having been a New York City Police Officer." The court then addressed defendant—not for a response to his lawyer's comments, but only to ask defendant if he wanted to hire private counsel. When defendant responded that he could not afford one, the court remarked that the State was paying for his appointed counsel and this counsel was "highly confident and experienced." As such, the court denied defendant's request for different appointed counsel. Against defendant's wishes, counsel represented him for the remainder of the prosecution and at sentencing.
On this appeal, defendant presses his claim that the court should have made a minimal inquiry of his complaints and that the failure to do so requires reversal and a new trial. I agree.
[*7]
II.
Both the State and Federal Constitutions guarantee effective counsel to indigent defendants (see Porto, 16 NY3d at 99; People v Baldi, 54 NY2d 137, 146 [1981]). Although this "entitlement does not encompass the right to counsel of one's own choosing" in every case (id.), that right is nonetheless "valued" (Sides, 75 NY2d at 824). Indeed, courts have an "ongoing duty" to ensure that appointed counsel remains effective and "should substitute counsel when a defendant can demonstrate 'good cause' " (People v Linares, 2 NY3d 507, 510 [2004], quoting{**43 NY3d at 564} Medina, 44 NY2d at 207). Where a defendant makes a "seemingly serious request[ ]" for new counsel (Sides, 75 NY2d at 824), supported by "specific factual allegations" (Porto, 16 NY3d at 100), "the trial court in exercising its discretion to grant or deny must carefully evaluate" it to ascertain whether good cause for substitution exists (Sides, 75 NY2d at 824). This careful evaluation must include "at least a 'minimal inquiry' " to "discern meritorious complaints from disingenuous applications by inquiring as to 'the nature of the disagreement or its potential for resolution' " (Porto, 16 NY3d at 100, quoting Sides, 75 NY2d at 825). Failure to inquire is grounds for reversal (see Sides, 75 NY2d at 825).
The record makes plain that the court did not investigate defendant's complaints, so the question is whether an inquiry was required based on defendant's allegations of counsel's deficiencies. It was. Defendant's statements were specific allegations of counsel's refusal to meet with defendant, disrespectful treatment, and awareness of defendant's desire to replace him, the last of which defendant believed was the reason for counsel's prolonging the proceedings. These allegations indicate a breakdown in communication between defendant and counsel, a complete lack of trust in counsel's commitment to defendant's defense, and defendant's desire to terminate the representation and replace counsel with a lawyer who would move the proceedings forward expeditiously and fight for him.
These were not vague or generalized complaints of "frustration" as in Porto, nor were they made close to trial, suggesting a delay tactic (cf. Porto, 16 NY3d at 102). To the contrary, defendant complained that counsel delayed the proceedings. Counsel was not even aware of defendant's request, a further indication of the breakdown in their professional relationship. And counsel's response to the assertions in the letter confirmed that defendant's allegations were serious, as counsel admitted that defendant was displeased with him and unwilling to accept his advice. These complaints triggered the court's obligation to make a minimal inquiry as to "the nature of the disagreement" (Porto, 16 NY3d at 100, quoting Sides, 75 NY2d at 825). "The court might well have found upon limited inquiry that defendant's request was without genuine basis, but it could not so summarily dismiss this request" (Sides, 75 NY2d at 825; cf. People v English, 201 AD3d 733, 735 [2d Dept 2022] [minimal inquiry required where the "relationship between the defendant and assigned counsel had been contentious for some{**43 NY3d at 565} time due to the defendant's lack of access to discovery and assigned counsel's inability to obtain specific evidence that the defendant requested"]; People v Jones, 173 AD3d 1628, 1629-1630 [4th Dept 2019] [minimal inquiry required where "defendant attempted to inform the court that he was pleading guilty only because he was not receiving effective assistance of counsel," even though defendant's "request may well have been a frivolous delaying tactic"]).[FN*]
The majority's suggestion that the court's brief colloquy with counsel constituted the requisite minimal inquiry is a mere obiter dictum, "uttered by the way, not upon the point or question pending" (Rohrbach v Germania Fire Ins. Co., 62 NY 47, 58 [1875]). In any event, the record belies the conclusion that this colloquy was adequate. Counsel's assertions that he and his investigator had gone "over this stuff" with defendant "any number of times," but that defendant did not like what counsel told him, do not contradict defendant's assertions that counsel refused to meet with him. Indeed, they do not even explain when counsel discussed these matters with defendant. Counsel's statements also do not address the potential breakdown in the attorney-client relationship, defendant's lack of trust in counsel's commitment to his defense, and defendant's complaints that counsel was delaying the proceedings and failing to focus on defendant's wish to develop a trial defense rather than take a plea. Counsel's suggestion that defendant wished to "shoot the messenger" because he did not "like the message" that counsel was conveying only confirmed defendant's complaint that communication had broken down between attorney and client. Nothing in this short exchange sufficed for the court to "discern" whether defendant's complaints were "meritorious" (Porto, 16 NY3d at 100).
[*8]
The majority purports to be faithful to our precedent, but its application of that precedent here undermines defendant's right to counsel. We do not require dates, times, and other minutia because a pro se defendant—especially one in pretrial detention with limited outside communication—may not know how best to support a request for new counsel. Moreover, a defendant{**43 NY3d at 566} may be unaware of the legal and ethical limits on counsel's ability to explain to the court the details of the breach in the attorney-client relationship.
Measuring defendant's request by the correct standard, he made specific factual allegations sufficient to trigger the court's duty to make a minimal inquiry into defendant's seemingly serious complaint. A court can avoid potential constitutional violations and an appellate issue by taking a few moments to make a minimal inquiry before deciding whether there is cause to substitute counsel. Those would be moments well spent. The court here failed to take this necessary precaution and therefore I would vacate the judgment of conviction and order a new trial.
Judges Garcia, Singas and Cannataro concur. Judge Rivera dissents in an opinion, in which Chief Judge Wilson and Judge Halligan concur.
Order affirmed.

Footnotes

Footnote 1:Because we conclude that defendant's letter, on its face, did not "suggest[ ] a serious possibility of irreconcilable conflict with his lawyer" (Sides, 75 NY2d at 825), we disagree with the dissent's suggestion that counsel's lack of awareness of defendant's letter and statements to the trial court somehow amplified or made obvious the seriousness of defendant's complaints (see dissenting op at 
562, 564). "[I]t is incumbent upon [the] defendant to make specific factual allegations of 'serious complaints about counsel,' " and the court's obligation to perform a minimal inquiry is implicated only where the defendant makes such a showing (Porto, 16 NY3d at 100, quoting Medina 44 NY2d at 207). Defendant simply did not meet that burden here.

Footnote 2:We respectfully disagree with our dissenting colleagues' assertion that our decision "undermines [a] defendant's right to counsel" (dissenting op at 
565). While we certainly agree that a defendant's right to counsel is "valued" (dissenting op at 
563, quoting Sides, 75 NY2d at 824), an indigent defendant's request for new counsel cannot be granted every time the defendant is displeased with their attorney. The "practical constraints" involved in administering legal assistance programs do not allow this (Porto, 16 NY3d at 100, quoting Medina, 44 NY2d at 207). In view of these practical constraints, our precedent recognizes that a court need not inquire of every complaint that a defendant makes about their attorney. Our holding merely reiterates what is evident from our precedent: absent specific and serious allegations, the court is not required to conduct a minimal inquiry.

Footnote *:The majority's statement that "an indigent defendant's request for new counsel cannot be granted every time the defendant is displeased with their attorney" is beside the point (majority op at 
559 n 2). This appeal concerns only whether the court was obliged to inquire into defendant's request and, if so, whether the court's inquiry was adequate—not whether the court should have granted the request.